IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY-ELIZABETH HARPER | ) | CASE NO. 3:22-cv-01308 |
| 30605 SW Magnolia Avenue | ) | |
| Wilsonville, OR 97070 | ) | HON. JAMES R. KNEPP II |
| | ) | |
| Plaintiff, | ) | **FIRST AMENDED** |
| | ) | **COMPLAINT** |
| vs. | ) | |
| | ) | **JURY DEMAND ENDORSED** |
| UNIVERSITY OF TOLEDO | ) | **HEREON** |
| c/o Ohio Atty. General Dave Yost | ) | |
| 30 East Broad Street, 14th Floor | ) | |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| BETHANY ZIVISKI | ) | |
| University of Toledo Center for | ) | |
| Administrative Support | ) | |
| 2801 W. Bancroft Street | ) | |
| Human Resources, MS 205 | ) | |
| Toledo, Ohio 43606 | ) | |
| | ) | |
| JOHN ELLIOTT | ) | |
| University of Toledo Chief HR Officer | ) | |
| 2801 W. Bancroft Street | ) | |
| Human Resources, MS 205 | ) | |
| Toledo, OH 43606 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Mary-Elizabeth Harper (the "Plaintiff" or "Harper"), by and through

her undersigned counsel, alleges as follows:

1. This is a gender, race and age discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, et seq.) ("Title VII") and Ohio Revised Code ("O.R.C.") § 4112.02.

2. Plaintiff Mary-Elizabeth Harper, an African American female born in 1944, is a resident of the State of Oregon.

3. Defendant University of Toledo (the "University") is a public research university located in Toledo, Ohio.

4. Defendant Bethany Ziviski, a resident of the State of Ohio, has been the University's Executive Director of Employee/Labor Relations and Human Resources Compliance since January 11, 2021.

5. Defendant John Elliott, a resident of the State of Alabama, is the University's Senior Associate Vice President and Chief Human Resources Officer.

6. The University, Ziviski and Elliott are an "Employer" within the meaning of the version O.R.C. § 4112.02(A)(2) in effect in January of 2021 and/or a "Person" within the meaning of O.R.C. §§ 4112.01(A) and 4112.02(J).

**Jurisdiction and Venue**

7. Plaintiff filed charges with both the Ohio Civil Rights Commission and Equal Employment Opportunity Commission stemming from the unlawful actions of the Defendants, and received her right to sue notification from the EEOC on January 13, 2022, which is within ninety (90) days of the filing

of the commencement of this proceeding.  An accurate copy of the right to sue notification is attached hereto as Exhibit 1.

8.  On November 18, 2021 the OCRC issued a Letter of Determination finding after investigation that it was probable that the University of Toledo had discriminated against Harper on the basis of race, sex and age.  A true and accurate copy of the OCRC Letter of Determination is attached hereto and made a part hereof as Exhibit 2.

9.  Jurisdiction is conferred upon this Court pursuant to Title VII, 42 U.S.C. § 2000e-5.

10. Jurisdiction is conferred upon this Court by virtue of 28 U.S.C. § 1331 – federal question jurisdiction and 28 U.S.C. § 1343 - civil rights.

11. Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) as the claims arose in Lucas County, Ohio where Defendant University of Toledo has its headquarters.

### Factual Background

12. Harper possesses a Juris Doctorate and has significant experience working in Human Resources and Labor Relations in the public sector, including as Senior Labor Relations and Affirmative Action Officer at Mount Hood Community College in Oregon.

13. On September 11, 2020, the Plaintiff applied for a Senior Labor Relations Specialist position at the University, which had posted for two of these positions in August of 2020.

3

14. A search committee made up of three employees of the University – Dreyon Wynn, Chanie Reinhart and LaShawna Jordan – selected the Plaintiff and one other candidate, Susan Bungard, to interview for the Senior Labor Relations Specialist positions with the University's Chief Human Resources Officer, John Elliott.

15. After interviewing Harper and Bungard, Elliott approved of both. The University offered Labor Relations Specialist positions to each woman in mid-December 2020.

16. A written offer of employment was sent to Harper on December 14, 2020. A copy of Harper's offer letter is attached hereto as Exhibit 3. Harper was offered the Senior Labor Relations Specialist position at an annual salary of $81,870.

17. In mid-December Harper and the University agreed on a January 25, 2021 start date.

## Susan Bungard

18. Susan Bungard, a Caucasian woman and the other person to whom the University offered the position of Senior Labor Relations Specialist in December of 2020 was supposed to start on January 11, 2021. In early January 2021 Bungard informed University employee Dreyon Wynn that she was sick with COVID and needed to change her start date. On January 4, 2021, the University agreed to extend Bungard's start from January 11 until January 25, 2021.

4

19. On January 18, 2021 Bungard notified Wynn that she would not be able to take the Senior Labor Relations Specialist position. Wynn, on the same day, again offered to push back Bungard's employment start date for four (4) weeks, into February, but Bungard ultimately withdrew from the position for personal reasons.

**Pre-employment Documents**

20. The Plaintiff was required to submit a variety of documents to the University prior to her start January 25, 2021 date. Among the documents the University wanted were the Plaintiff's higher education transcripts, of which there were several.

21. In December of 2020 and January of 2021, COVID-19 was rampant throughout the United States, and many, many employees were working remotely or on reduced schedules. Further, from mid-December to mid-January, many institutions of higher learning were on break.

22. As a result, the Plaintiff encountered delays in obtaining some of the documents required by the University, including her transcripts.

23. The Plaintiff also experienced a serious illness in the family in late December and early January, which further contributed to the delay.

24. The Plaintiff called Kimberly Fahey, a specialist in the University's HR Office, to let her know about the problems the Plaintiff was encountering gathering the necessary documents. Fahey acknowledged the difficulties, and indicated that the delay would not be a problem.

25. Fahey also informed the Plaintiff that Susan Bungard's start date had been extended and that the Plaintiff's start date could also be pushed back to later in January.

26. As of January 20, 2021, a few items of the Plaintiff's paperwork, including her higher education transcripts, still needed to be sent to the University.

### Bethany Ziviski and Daniel Powell

27. Ziviski, a Causcasian female, started at the University on January 11, 2021 as Executive Director of Labor/Employee Relations and HR Compliance.

28. At 9:04 AM Eastern Time on January 20, Fahey emailed Ziviski and Dreyon Wynn to alert them that the Plaintiff was missing several of the University's pre-employment documents.

29. Shortly after Wynn received that email, he phoned the Plaintiff.  After learning that the Plaintiff had encountered delays in obtaining some of the required documents, in that phone conversation Wynn extended the Plaintiff's start date from January 25 to February 9, 2021.

30. On January 20, 2021, a short time after the phone call between Wynn and the Plaintiff where Wynn had extended the Plaintiff's start date, Ziviski told Fahey to rescind the Plaintiff's offer of employment.

31. Fahey emailed the Plaintiff on January 20, 2021 at 11:34 AM Eastern Time to notify her that the University was rescinding the Plaintiff's offer of employment.  A letter signed by Defendant Elliott rescinding the Plaintiff's

6

offer was attached to Fahey's email.  *See* Exhibit 4 attached hereto and incorporated herein.

32. On January 20, 2021, and probably much sooner than that, Defendant Ziviski had decided to offer a Senior Labor Relations Specialist position to Daniel Powell, a white male significantly younger than the Plaintiff.  On January 21, 2021, one day after rescinding the University's offer to the Plaintiff, Defendant Ziviski decided to have the University post a "new" position described as Senior Labor and Employee Relations and Compliance Specialist.  Defendant Elliott approved of all of these actions.

33. The job descriptions for the Senior Labor Relations Specialist and Senior Labor and Employee Relations and Compliance Specialist were virtually identical.  The University did not re-post a Senior Labor Relations Specialist position in January of 2021.

34. On January 26, 2021, the University offered the Senior Labor Relations Specialist and Compliance Specialist position to Daniel Powell, a white male significantly younger than the Plaintiff.  *See* Exhibit 5 attached hereto and incorporated herein.  Powell's job offer was for $90,000 annually.  Defendant Ziviski communicated this job offer to Powell and Defendant Elliott approved Ziviski's request to give the job to Powell.

35. None of the other four candidates for the Senior Labor and Employee Relations and Compliance Specialists were even interviewed by the

University, nor was Powell interviewed by any University employee other than Ziviski.

36. The University's Recruitment of Personnel and Hiring Procedures requires that all employment offers consider the University's Affirmative Action Plan. The January 2021 job offer to Dan Powell did not comply with this requirement.

37. On April 15, 2021, Ohio's Employment Law Uniformity Act ("ELUA") became effective. The ELUA made several changes to Ohio's employment discrimination statutes.

38. The unlawful discrimination toward the Plaintiff by the Defendants occurred prior to the effective date of the ELUA. Accordingly, the laws governing employment discrimination in effect in Ohio prior to the ELUA govern this proceeding.

<u>**COUNT ONE**</u>
<u>**Race, Gender and Age Discrimination in**</u>
<u>**Violation of O.R.C. § 4112.02(L)**</u>

39. Plaintiff repeats and realleges all the foregoing paragraphs as if fully set forth herein.

40. Plaintiff is an African American female born in 1944.

41. Plaintiff was clearly qualified for the position of Senior Labor Relations Specialist, as the University had offered that job to her in December of 2020 after interviews and an extensive vetting process.

42. The Defendants discriminated against the Plaintiff on the basis of her gender, race and age by offering a virtually identical position to that offered to the Plaintiff to a significantly younger Caucasian male, Daniel Powell, and at a higher salary than had been offered to the Plaintiff.  Powell received the job offer from the University six days after the University rescinded the offer to the Plaintiff.  Powell was the only candidate interviewed for the job posting.

43. Defendants lacked any legitimate business reason for their adverse action toward Plaintiff and their stated explanation for their conduct is mere pretext for discrimination.

44. Due to the Defendants' unlawful conduct described above, Plaintiff has suffered non-economic and economic injuries, including but not limited to, pain and suffering and the loss of salary, benefits and other privileges and conditions of employment, for which Plaintiff is entitled to recover compensatory damages pursuant to O.R.C. § 4112.99 and 4112.02(L).  All or a portion of Plaintiff's damages are likely to continue indefinitely into the future.

## COUNT TWO
### Race, Gender and Age Discrimination in Violation of Title VII, 42 U.S.C. §2000e-2

45. Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

46. Plaintiff, who is an African American female born in 1944, is a member of several protected classes under Title VII.

47. The Defendants' actions, as described herein, resulted in Harper suffering an adverse employment action because of gender, race and age in violation of Title VII.

<u>**COUNT THREE**</u>
<u>**Age Discrimination in Violation**</u>
<u>**of 29 U.S.C § 621 *et seq*.**</u>

48. Plaintiff repeats and realleges all the forgoing paragraphs as if fully set forth herein.

49. At all relevant times Plaintiff was a member of a statutorily protected class under 29 U.S.C. § 631(a).

50. Defendants rescinded the job offer to Plaintiff due to her age.

51. Defendants offered the Plaintiff's position to a significantly younger white male six (6) days after rescinding Plaintiff's offer.  The younger white male's annual salary was significantly higher than that offered to the Plaintiff.

52. Defendants violated 29 U.S.C § 621, *et seq*. and 29 U.S.C. § 623(a) by rescinding Plaintiff's offer based on her age.

53. As a direct and proximate consequence of Defendants' conduct Plaintiff has suffered and will continue to suffer damages.

## COUNT FOUR
## Aiding and Abetting in Unlawful Discrimination
## In Violation of O.R.C. § 4112.02(J)

54. Plaintiff repeats and realleges all the foregoing paragraphs as if fully set forth herein.

55. Defendants Ziviski and Elliott aided and abetted in the unlawful discrimination against the Plaintiff by rescinding the December 2020 job offer to the Plaintiff and offering the position to a younger Caucasian male at a higher salary.

56. O.R.C. § 4112.02(J) makes it unlawful for any person to participate in another's discriminatory practices.

57. Defendants rescinded a job offer to the Plaintiff only to turn around and offer a virtually identical job to a younger white male six days later.

58. Defendants continue to lack any legitimate business reason for their adverse actions towards Plaintiff, and the stated explanation for their conduct is a mere pretext for unlawful discrimination.

59. Due to Defendants' unlawful conduct, the Plaintiff has suffered non-economic and economic injuries, including, but not limited, pain and suffering and the loss of salary, benefits, and other privileges and conditions of employment for which Plaintiff is entitled to recover compensatory damages pursuant to O.R.C. §§ 4112.99 and 4112.02(L).  All or a portion of the Plaintiff's damages are likely to continue indefinitely into the future.

60. The aiding and abetting by Ziviski and Elliott in the discriminatory treatment of Plaintiff was malicious, willful, wanton, and/or in conscious disregard of Plaintiff's rights, rendering Ziviski and Elliott liable for punitive damages and attorneys' fees.

WHEREFORE, Harper states that she seeks an amount in excess of $25,000 to fully, fairly and justly compensate her for her injury, damages, and loss and respectfully prays that this Court enter judgment in her favor and award her compensatory damages, consequential damages, incidental damages, back pay, front pay, punitive damages, all costs and reasonable attorney's fees, and grant such additional or alternative relief as the Court may determine to be just and equitable.

Respectfully submitted,

COHEN ROSENTHAL & KRAMER LLP


/s/ Ellen M. Kramer
Ellen M. Kramer #0055552
emk@crklaw.com
Jason R. Bristol #0072989
jbristol@crklaw.com
3208 Clinton Avenue
Cleveland, Ohio 44113
216-815-9500 [Phone and Fax]
www.crklaw.com

## **<u>JURY DEMAND</u>**

The Plaintiff demands a trial by jury on each claim that may be so tried.


<u>/s/ Ellen M. Kramer</u>